**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 19-cv-23529-BLOOM/Louis**

MI PULPE, LLC, *formerly known*
*as* Del Valle Import and Export #2,

    Plaintiff,

v.

MEXILINK INCORPORATED,

    Defendant.
_____/

## ORDER ON MOTION FOR REMAND

**THIS CAUSE** is before the Court upon Plaintiff Mi Pulpe, LLC's ("Mi Pulpe" or "Plaintiff") Motion for Remand, ECF No. [11] (the "Motion"). Defendant Mexilink Incorporated ("Mexilink" or "Defendant") filed a response, ECF No. [14] ("Response"), to which Plaintiff filed a reply, ECF No. [15] ("Reply"). The Court has carefully considered the Motion, the Response and Reply, the record in this case and the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted.

### I.    BACKGROUND

Plaintiff's Complaint, ECF No. [1-1], filed in state court seeks injunctive relief and damages for Defendant's alleged breach of contract and misappropriation of trade secrets. According to the Complaint, Mi Pulpe is a national distributor of food products originating in Central America. Mexilink is a national, full-service importer, master distributor and marketer of leading Mexican brands in the United States. In 2016, Mi Pulpe and Mexilink entered negotiations to broaden Mexilink's product line to include more brands from Central America. As a result, they entered into a written agreement (the "Agreement") to explore a distribution network for Honduran

and other Central American products and brands for distribution in the United States. Pursuant to the Agreement, Mexilink is prohibited from soliciting business from current, former, or prospective customers, suppliers, employees or business contacts of Mi Pulpe. Nevertheless, Mexilink allegedly began contacting Mi Pulpe's customers and suppliers for potential business negotiations that do not include Mi Pulpe. *See generally* ECF No. [1-1].

Defendant removed the case to this Court based on diversity jurisdiction. *See* ECF No. [1] (the "Notice"). In the Motion, Plaintiff requests that the Court remand the case, arguing that Defendant has failed to establish that the amount in controversy exceeds $75,000.00.

## II. LEGAL STANDARD

"A removing defendant bears the burden of proving proper federal jurisdiction." *Coffey v. Nationstar Mortg., LLC*, 994 F. Supp. 2d 1281, 1283 (S.D. Fla. 2014). A district court has diversity jurisdiction where the parties are completely diverse and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332(a). "Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdiction requirement." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010); *see also* 28 U.S.C. § 1332(a). "To determine whether this standard is met, a court first examines whether it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1330 (11th Cir. 2006) (citation omitted), *abrogated on other grounds by Dudley v. Eli Lilly & Co.*, 778 F.3d 909 (11th Cir. 2014). "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Id.* (citation omitted).

"[A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka*, 608 F.3d at 754 (citations omitted). The use of reasonable inferences and deductions is permissible to show the amount that is in controversy in the case. *See id*. (discussing the difference between reasonable deductions and inferences with "conjecture, speculation, or star gazing"). However, district courts narrowly construe removal statutes, and where a plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095, (11th Cir. 1994), *superseded in part by statute*, 28 U.S.C. § 1446. With these standards in mind, the Court considers the Motion.

### III.  DISCUSSION

In the Motion, Mi Pulpe argues that this case should be remanded because Mexilink fails to meet its burden. It contends that the Notice improperly calculates the amount in controversy relying upon factors that are not relevant to this case—specifically, the amount of unpaid invoices in a separate lawsuit currently pending in Texas state court. In response, Mexilink argues that the pleadings, evidence, and reasonable inferences to be drawn from them show by a preponderance of the evidence that Mi Pulpe's claimed damages, attorneys' fees, and the value of the injunctive relief sought exceed $75,000.00. Upon review, the Court agrees that Mexilink has failed to satisfy its burden.

The Court first reviews the allegations in the Complaint – the operative pleading – to determine whether the amount in controversy is satisfied. In the Complaint, Mi Pulpe alleges that it seeks "temporary and permanent injunctive relief and for damages in excess of $15,000.00, excluding interest, costs and attorneys' fees." ECF No. [1-1] ¶ 1. As such, it is not facially apparent from the Complaint that the amount in controversy is satisfied.

Because Mi Pulpe does not plead a specific amount of damages, the Court next looks at the Notice to determine whether the amount in controversy is satisfied. In the Notice, Mexilink asserts that a subsequent Commission Agreement between Mi Pulpe and Mexilink concerning a Honduran manufacturer—Corporacion Dinant's—food products, which is the subject of pending litigation in Texas state court, involves over $300,000.00 of unpaid invoices between the parties. From this fact, Mexilink extrapolates that the injunctive relief in this case is valued in excess of $75,000.00. The Court disagrees.

First, the Court is not persuaded that the subject matter of the litigation pending in Texas is relevant to this Court's inquiry for purposes of determining its own diversity jurisdiction, especially where the cases involve allegedly different agreements. Second, Mexilink does not establish by a preponderance of the evidence that the value of the injunction *to Mi Pulpe* is in excess of $75,000.00. "For amount in controversy purposes, the value of injunctive or declaratory relief is the 'value of the object of the litigation' measured from the plaintiff's perspective." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 168 (11th Cir. 2000) (citing *Ericsson GE Mobile Commc'ns, Inc. v Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 218-20 (11th Cir. 1997)). "In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000). Here, Mexilink contends that under the Commission Agreement, which is the subject of the Texas litigation, millions of dollars in product has been supplied by Dinant to Mexilink, resulting in commission payments well over $75,000.00 to Mi Pulpe. As a result, Mexilink postulates that because the injunction requested seeks to prevent Mexilink from doing business directly with at least three of Mi Pulpe's customers and suppliers, including Dinant, the value of the injunction exceeds the jurisdictional threshold. However, taken to its logical

conclusion, the requested injunction would in fact result in a loss to Mi Pulpe under the Commission Agreement. Therefore, Mexilink's asserted value of the injunctive relief sought is purely speculative.

Mexilink's assertion that no less than $45,000.00 is alleged in the Complaint based upon Mi Pulpe's allegations regarding the $15,000.00 state court jurisdictional threshold and requested exemplary damages for a willful and malicious misappropriation of trade secrets under Florida Statutes section 688.004(2) is similarly flawed. Nevertheless, even assuming that Mi Pulpe's claims are worth at least $45,000.00, Mexilink does not establish by a preponderance of the evidence that the claim for attorneys' fees authorized by statute supplies the amount necessary to satisfy the remaining amount in controversy requirement.

Mexilink contends that this case involves time intensive sophisticated litigation that will require discovery outside the jurisdiction and a hearing on the merits of a (yet-to-be-filed) motion for temporary injunction. Mexilink provides the declaration of Thomas R. Julin regarding the amount of attorney's fees the Plaintiff will likely incur in this case, ECF No. [14-3], relying on *DO Restaurants, Inc. v. Aspen Specialty Insurance Company*, 984 F. Supp. 2d 1342, 1346 (S.D. Fla. 2013).[1] Mexilink's reliance, however, is misplaced. Although the Court of Appeals for the Eleventh Circuit has explained that, "[w]hen a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy," *Morrison*, 228 F.3d at 1265, it has not yet clarified whether the amount of attorney's fees included in the amount in controversy is the amount accrued at the time of removal or the prospective amount of attorney's fees required to

---

[1] Mexilink requests that the Court take judicial notice that the attorney's fees to prosecute this type of case will easily exceed $75,000.00; however, the request is improper as it would obviate Mexilink's burden under governing case law to demonstrate the amount in controversy by a preponderance of the evidence. Furthermore, Mexilink cites no supporting legal authority establishing that taking judicial notice of such facts is permissible or proper.


litigate the entire case. In fact, this issue of including statutory attorney's fees in the amount in controversy has caused a split in district courts within the Eleventh Circuit. *See Bender v. GEICO Gen. Ins. Co.*, No. 8:17-cv-872-T-33TBM, 2017 WL 1372166, at *1 (M.D. Fla. Apr. 17, 2017) (discussing the divide among courts in this circuit "over whether to include the projected amount of attorney's fees or only attorney's fees as of the time of removal") (citations omitted); *Brown v. Am. Exp. Co., Inc.*, No. 09-61758-CIV, 2010 WL 527756, at *7 (S.D. Fla. Feb. 10, 2010) (discussing the "[c]onflicting case law [that] exists as to whether the amount of attorney's fees for the amount-in-controversy analysis should be calculated as of the date of removal or through the end of the case") (citations omitted).

Despite this split, many district courts across the State of Florida have calculated statutorily authorized attorney's fees as those accrued at the time of removal, especially in determining whether jurisdiction exists.[2] This conclusion is consistent with the Eleventh Circuit precedent establishing that "[j]urisdictional facts are assessed on the basis of plaintiff's complaint *as of the time of removal*. . . . That plaintiff *might* ask for or recover more after removal is not sufficient to support jurisdiction." *Burns*, 31 F.3d at 1097 n.13 (emphasis in original) (citations omitted). In addition, calculating attorney's fees at the point of removal comports with "the general rule that post-removal events, such as the subsequent generation of attorney fees, cannot create jurisdiction that was lacking at the outset." *Lott & Friedland, P.A.*, 2010 WL 2044889, at *4 (citing *Rogatinsky*, 2009 WL 3667073, at *3 ("post-removal events . . . will not retroactively establish subject-matter jurisdiction")); *Waltemyer*, 2007 WL 419663, at *2 ("While attorney fees through the conclusion of the litigation are included when the

---

[2] *See Frisher v. Lincoln Benefit Life Co.*, No. 13-20268-CIV, 2013 WL 12092525, at *2 (S.D. Fla. Aug. 19, 2013); *Gold v. Traveler Indemnity Co.*, No. 12-80036-CIV, 2012 WL 13019199, at *2 (S.D. Fla. Mar. 29, 2012); *Lott & Friedland, P.A. v. Creative Compounds, LLC*, No. 10-20052-CV, 2010 WL 2044889, at *4 (S.D. Fla. Apr. 21, 2010); *Rogatinsky v. Metropolitan Life Ins. Co.*, No. 09-80740-CIV, 2009 WL 3667073, at *3 (S.D. Fla. Oct. 26, 2009); *Waltemyer v. Nw. Mut. Life Ins. Co.*, No. 2:06-cv-597-FtM-29DNF, 2007 WL 419663, at *2 (M.D. Fla. Feb. 2, 2007).

action is filed initially in federal court, there is no reason to deviate from the general rule that in a removed case the amount in controversy is determined as of the time of removal and the court cannot rely on post-removal events in examining its subject matter jurisdiction.") (citing *Morrison*, 228 F.3d at 1265 and *Poore v. American-Amicable Life Ins. Co. of Texas*, 218 F.3d 1287, 1290-91 (11th Cir. 2000)).

Therefore, the Court concludes that the amount in controversy does not include highly speculative, prospective amounts of attorney's fees, but rather includes only those fees accrued as of the time of removal. *Gold*, 2012 WL 13019199, at *2 ("The Seventh Circuit in *Gardynski-Leschuck v. Ford Motor Company*, considered this issue and ruled that the amount in controversy calculation should not include 'the value of legal services that have not been and may never be incurred' because the amount of legal fees are not 'in controversy' until they are accrued.") (quoting *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir. 1998)). Here, Defendant presents no evidence to establish the amount of attorney's fees accrued as of the time of this removal.

As such, Mexilink has failed to satisfy its burden of establishing that the amount in controversy in this case exceeds $75,000.00. *Coffey*, 994 F. Supp. 2d at 1283 ("A removing defendant bears the burden of proving proper federal jurisdiction."). Therefore, the Court concludes that it does not have subject matter jurisdiction over the instant action.

Finally, in the alternative, Mexilink requests leave to take limited jurisdictional discovery, relying on *American Civil Liberties Union of Florida, Inc. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017). However, as Mi Pulpe points out, *City of Sarasota* is inapposite because the case did not involve jurisdictional discovery related to the amount in controversy requirement. Accordingly, Mexilink's alternative request is denied.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Mi Pulpe's Motion, **ECF No. [11]**, is **GRANTED**. This case is **REMANDED** to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. All remaining pending motions are **DENIED AS MOOT**, and the Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers in Miami, Florida, on October 2, 2019.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record